Claude **THERIAULT**, Petitioner,

v.

Ralph **LAMB**, Clark County Sheriff, Respondent.

Application of Robert Gordon **JOHNSTONE**, for a Writ of Habeas Corpus.

Civ. Nos. LV–74–7, LV–74–4RDF.

United States District Court, D. Nevada.

May 21, 1974.

---

Gordon L. Hawkins, Alan R. Johns, Las Vegas, Nev., for petitioner Theriault.

Roy A. Woofter, Dist. Atty., Clark County, Las Vegas, Nev., for respondent.

Raymond E. Sutton, Anthony M. Earl, Las Vegas, Nev., for Johnstone.

———◆———

## ORDER DENYING PETITIONS FOR HABEAS CORPUS
## FACTS

ROGER D. FOLEY, Chief Judge.

Both petitioners, Theriault and Johnstone, are presently being held in the Clark County Jail pending trial in Nevada state court upon an indictment which charges petitioners and a Lloyd Paulette with two counts of murder. The two petitions for habeas corpus relief have been consolidated inasmuch as they present the same factual background and legal issue. Invoking jurisdiction under 28 U.S.C. § 2254(d)(4) and (7), petitioners allege that they are being held in confinement contrary to the requirements of due process of law. Arguing that although Nevada Revised Statutes § 171.010 renders "(e)very person, whether an inhabitant of this state, or any other state, or of a territory or district of the United States" liable for punishment for a violation of Nevada law committed within Nevada, that statute nowhere mentions nonresident aliens, petitioners claim, in effect, that nonresident aliens are immune from punishment for violations of Nevada law committed by such aliens in Nevada and that Nevada state courts have no jurisdiction over such violators. It is undisputed that petitioners are nonresident Canadians, and petitioners contend that the Nevada courts are without jurisdiction either to confine or try them.

Petitioner Theriault applied for habeas corpus relief in the Eighth Judicial District Court of Nevada, which was denied after thorough consideration of the merits of the above contention; this denial was affirmed on appeal to the Nevada Supreme Court. State of Nevada v. Theriault, Case No. 19975, Eighth Judicial District of Nevada, Decision and Order of July 26, 1973, affirmed sub nomine Theriault v. Sheriff, Nevada Supreme Court, 1973, 89 Nev. 506, 515 P.2d 397, rehearing denied Dec. 18, 1973. Prior to Theriault's seeking state habeas corpus relief, this Court had denied his previous petition for habeas corpus on the grounds that he then was not yet in custody pursuant to a judgment of the state court (28 U.S.C. § 2254(a)) and because he had not exhausted remedies available to him in the state court (28 U.S.C. § 2254(c)). Theriault v. Lamb, Case No. 1841, D. Nev., June 12, 1972. At that time this Court stated:

"Petitioner must stand trial and, if convicted and sentenced to the Nevada State Penitentiary, he may then appeal his conviction to the Nevada Supreme Court and raise, among others, the question raised in this petition." (Id., p. 1.)

Theriault now alleges that by exhausting state habeas corpus remedies he has met the exhaustion requirement and that by suffering a denial of a state writ of habeas corpus he is effectively being confined pursuant to a judgment of the state court.

Petitioner Johnstone also sought state habeas corpus relief which was denied by the state district court after full consideration of the issue raised herein. See Nevada v. Johnstone, Case No. 19975, Eighth Judicial District of Nevada, Decision and Order of August 1, 1973, rehearing denied September 5, 1973. Appeal to the Nevada Supreme Court was ordered dismissed for failure to timely file the notice of appeal. Johnstone v. Nevada, Nevada Supreme Court, October 23, 1973. Johnstone alleges he has exhausted all state remedies presently available to him.

Neither petitioner has gone to trial on the murder charges.

## ISSUE

Should this Court abstain from interposing by way of habeas corpus at this stage of the state court proceedings?

## DISCUSSION

In a short per curiam, the Ninth Circuit has outlined an important consideration which arises when a federal court is resorted to on habeas corpus petition *prior* to a pending trial in state court. In Drury v. Cox, 457 F.2d 764, at pages 764–765 (9th Cir. 1972), the Court stated:

> "The district court considered the issue in this case to be whether the evidence at a preliminary hearing before an Arizona State Magistrate was sufficient to establish probable cause to bind Drury over for trial on an open charge of murder, degree unspecified. The Arizona Supreme Court held the evidence sufficient. Drury v. Burr, 107 Ariz. 124, 483 P.2d 539 (1971). The district court, after an independent review of the record, agreed and denied Drury's petition for habeas corpus without a hearing. Drury appeals, claiming that his detention for trial amounted to a denial of due process because of lack of probable cause.

> "We affirm on different grounds. Our reading of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669, convinces us that only in the most unusual circumstances is a defendant entitled to have federal interposition by way of injunction or habeas corpus until after the jury comes in, judgment has been appealed from and the case concluded in the state courts. Apparent finality of one issue is not enough."

While the Sixth Circuit, in Rivers v. Lucas, 477 F.2d 199, 203 (6th Cir. 1973), has refused to follow Drury, stating:

> ". . . we have found no Supreme Court decision which holds that pretrial habeas corpus relief is the equivalent of an injunction to stay proceedings in a state court",

such a rejection ignores the substantial identity of concern for a proper respect for state functions in "Our Federalism," the notion of comity, existing in actions to enjoin pending state criminal prosecutions and petitions for a pretrial writ of habeas corpus barring a state prosecution. In Younger v. Harris, supra, the Supreme Court, discussing federal enjoining of a state criminal prosecution, stated:

> "The precise reasons for [the] longstanding public policy against federal court interference with state court proceedings have never been specifically identified but the primary sources of the policy are plain. One is the basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief . . . This underlying reason . . . is reinforced by an even more vital consideration, the notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to per-

form their separate functions in their separate ways. This, perhaps for lack of a better and clearer way to describe it, is referred to by many as 'Our Federalism' . . . .

"This brief discussion should be enough to suggest some of the reasons why it has been perfectly natural for our cases to repeat time and time again that the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions . . . :

'Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, and following cases have established the doctrine that when absolutely necessary for protection of constitutional rights courts of the United States have power to enjoin state officers from instituting criminal actions. But this may not be done except under extraordinary circumstances where the danger of irreparable loss is both great and immediate. Ordinarily, there should be no interference with such officers; primarily, they are charged with the duty of prosecuting offenders against the laws of the State and must decide when and how this is to be done. The accused should first set up and rely upon his defense in the state courts, even though this involves a challenge of the validity of some statute, unless it plainly appears that this course would not afford adequate protection.' (Fenner v. Boykin, 271 U.S. 240, 243–244, 46 S.Ct. 492, 70 L.Ed. 927 (1926).)" 401 U.S. at 43–45.

In Ex parte Royall, 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886), a pretrial habeas corpus case in which the Court held that although a federal district court has power in advance of trial to inquire into alleged constitutional issues presented, it need not and should not do so pending consideration of the questions in the normal course of trial by the state court, one finds expression of concerns virtually identical to those set forth in *Younger*:

"We cannot suppose that Congress intended to compel . . . [the federal] courts . . . to draw to themselves, in the first instance, the control of all criminal prosecutions commenced in state courts . . . The injunction to hear the case summarily, and thereupon 'to dispose of the party as law and justice require,' does not deprive the court of discretion as to the time and mode in which it will exert the powers conferred upon it. That discretion should be exercised in the light of the relations existing, under our system of government, between the judicial tribunals of the Union and of the States, and in recognition of the fact that the public good requires that those relations be not disturbed by unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution." (Id., at p. 251.)

It is not surprising, therefore, that the Ninth Circuit has indicated the desirability of abstention in pretrial habeas corpus settings, referring to *Younger*, and such a position cannot be summarily discarded.

The argument exists, however, that habeas corpus relief in federal court is fundamentally different from the injunctive relief discussed in *Younger*, at least insofar as the procedural and substantive safeguards regarding appropriate comity, because of the requirement, in habeas corpus proceedings, of exhaustion of state remedies. The exhaustion requirement is premised on the notion of comity (see, e. g., Harrison v. Wainwright, 424 F.2d 633 (5th Cir. 1970); United States ex rel. Speaks v. Brierley, 417 F.2d 597 (3rd Cir. 1969), cert. denied 397 U.S. 1051, 90 S.Ct. 1388, 25 L.Ed.2d 665; Ross v. Middlebrooks, 188 F.2d 308 (9th Cir. 1951), cert. denied 342 U.S. 862, 72 S.Ct. 90, 96 L.Ed. 649), and is derived from the concerns expressed in Ex parte Royall, 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed.2d 868 (1886), quoted in the text. See Hart and Wechsler, The Federal Courts and the Federal System, 2d ed., pp. 1487–88 (1973). Under this require-

ment, the petitioner must first present to the state courts the *same* claim he urges on habeas. Picard v. Connor, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). In this manner, the state courts are given first opportunity to consider and adjudicate the merits of the constitutional contention which has been raised, and the philosophy of "Our Federalism" is not trammeled by according federal courts a supervisory role over state courts. Hence, where a petitioner satisfies the exhaustion requirement, whether it be a pretrial or post trial, concern for comity should no longer bar examination of the constitutional issue by a federal court upon writ of habeas corpus. But this is not the position adopted by the Ninth Circuit.

In *Drury*, the habeas petitioner had pursued Arizona remedies all the way to the Arizona Supreme Court in litigating his due process contention of lack of probable cause to bind him over for trial for murder. With the exhaustion requirement thus satisfied as to the constitutional issue, see Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), the Ninth Circuit nevertheless ruled that "(a)pparent finality of one issue is not enough" and "only in the most unusual circumstances" is a defendant entitled to pretrial interposition by federal courts in a state criminal proceeding. (Drury v. Cox, supra, 457 F.2d at pp. 764–765.) This interpretation of *Younger* is binding upon this Court.

The question remains as to whether the instant petitions present the "most unusual circumstances" contemplated in *Drury* as justifying a federal habeas corpus proceeding at this time. Assumedly, the Court in *Drury* was referring to the unusual circumstances outlined in *Younger* as justifying intervention in state criminal proceedings. Petitioners' allegations do not depict a situation of harassment or bad faith prosecution on the part of state officials. See *Younger*, supra, 401 U.S. at 47–49, 53–54. Further, the Court in *Younger* stressed that the imminence of a criminal prosecution, " ' "even though alleged to be unauthor-

ized and hence unlawful is not alone ground for relief . . ." ' " Id. at p. 46. Applying these considerations, and the statement in *Drury* that "(a)pparent finality of one issue is not enough" (*Drury*, supra, 457 F.2d at 765), it cannot be said that the circumstances of petitioners are of such a nature that federal intervention is warranted at this juncture.

## CONCLUSION

In light of *Drury*, this Court abstains from considering the merits of the petitions for writs of habeas corpus and dismisses the petitions for habeas relief.